UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TRUSTEES OF THE FLORIDA
CARPENTERS PENSION FUND,
TRUSTEES OF THE FLORIDA UBC
HEALTH FUND, TRUSTEES OF THE
FLORIDA CARPENTERS TRAINING
TRUST FUND, CARPENTERS
LOCAL 1905 and FLORIDA
CARPENTERS REGIONAL
COUNCIL,

      Plaintiffs,

v.                                         **Case No: 5:23-cv-76-JSM-PRL**

COOK RETAIL CONSTRUCTION
SERVICES, LLC,

      Defendant.
_____

REPORT AND RECOMMENDATION[1]

Before the Court in this Employment Retirement Income Security Act of 1974 (ERISA),[2] case is the plaintiffs' motion for partial default judgment against Defendant Cook Retail Construction Services, LLC. (Doc. 11). For the reasons explained below, I recommend that Plaintiffs' motion be granted.

_____

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] 29 U.S.C. § 1132.

I.   BACKGROUND

As alleged in the complaint, Plaintiffs are employee benefit plans, supplemental contributions, and an unincorporated labor organization, which are owed unpaid contributions and dues from Defendant for work performed in the Middle District. (Doc. 1 at ¶¶ 1–4). Defendant signed a collective bargaining agreement (CBA), thereby ratifying "the Agreements and Declarations of Trust and Rules and Regulations of the fringe benefit funds." (Doc. 1 at ¶¶ 6, 8; Doc. 1-3 at 10). The Declarations of Trust provide that an employer, like Defendant, "shall promptly furnish for inspection to the Trustees or their designee, on demand, all payroll records relating to all employees . . . . [which] shall include . . .: (1) IRS Form 941; (2) Unemployment Compensation Tax Form UCT-6; (3) payroll journal, disbursements journal, payroll subsidiary; (4) time and job record cards; (5) listing or schedule of subcontractors; (6) all other payroll records." (Doc. 1 at ¶ 9). On December 7, 2022, the plaintiff-funds through their certified public accountant, sent a letter to Defendant requesting an audit of its payroll records. (Doc. 1 at ¶ 10; Doc. 11-2 at 1-2). Then, the certified public accounting firm spoke to Defendant's president who agreed to furnish the records. (Doc. 1 at ¶ 11). After receiving no records, Defendant's president and other employees were emailed on different occasions, but no response was received. (Doc. 1 at ¶¶ 12-14). To date, Plaintiffs have not heard back from Defendant. (Doc. 1 at ¶ 14).

On February 2, 2023, Plaintiffs initiated this suit against Defendant, asserting claims under the CBA and ERISA, 29 U.S.C. §§ 1132 and 1145. (Doc. 1). Specifically, Count I seeks an order compelling the production of Defendant's books and records to determine the accuracy of contributions made or required to be made. *Id.* at 3. Count II asserts a claim for unpaid contributions, liquidated damages, interest, and attorney's fees under ERISA. *Id.* at 5.

Count III asserts a claim for unpaid dues checkoff payments withheld from wages of employees. *Id.* at 7.

On February 15, 2023, the plaintiffs served the summons and complaint on Defendant. (Doc. 9). Defendant failed to file a responsive pleading, and the Clerk entered default on March 15, 2023. (Doc. 10). To date, Defendant has not sought to vacate the default or otherwise appeared or defended this action.[3] On May 6, 2023, Plaintiffs filed the instant motion for partial default judgment against Defendant on Count I, seeking an audit of its books pursuant to the CBA and Declarations of Trust. (Doc. 11). Because the plaintiffs cannot determine the amount of unpaid contributions and unpaid dues checkoff payments without an audit of Defendant's books, Plaintiffs are seeking partial default judgment on the auditing claim before seeking default judgment on Counts II and III. *Id.* at ¶ 10.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). Although "a default is not treated as an absolute confession by the defendant of his [or her] liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (internal quotation marks omitted). Thus, the court "must

---

[3] On June 2, 2023, the Court ordered Defendant to show cause within fourteen days why this instant motion should not be granted for its failure to appear or otherwise defend this action. (Doc. 15). On June 20, 2023, James Cook, the president of Defendant, filed a response to that Order. (Doc. 16). Because Mr. Cook is not an attorney and thus cannot represent Defendant, on June 22, 2023, the Court provided Defendant with another fourteen days to file a notice of appearance and respond to the complaint. (Doc. 17). To date, Defendant has not filed a notice of appearance or otherwise responded to the complaint.

ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* Additionally, before entering a default judgment, a court has "an obligation to assure there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

Further, although "well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Philpot*, 317 F.3d at 1266; *see also Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Finally, under Rule 55(b) the court has discretion to hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient evidence in the record. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x. 908, 911–12 (11th Cir. 2011).

Under Federal Rule of Civil Procedure 54(b), if an action involves multiple claims for relief, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if [it] . . . expressly determines that there is no just reason for delay." *Id.*; *Plum Creek Tech., LLC v. Next Cloud, LLC*, 8:19-CV-1974-T-60CPT, 2020 WL 3052331, at *5 (M.D. Fla. Feb. 5, 2020), *report and recommendation adopted*, 2020 WL 1074924 (M.D. Fla. Mar. 6, 2020). To determine whether there is just reason for delay, the Court "balance[s] the judiciary's

administrative interests with the relevant equitable concerns." *Cardinale v. Wang*, No. 6:21-CV-379-ACC-GJK, 2021 WL 7543624, at *2 (M.D. Fla. Sept. 13, 2021) (citing *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997)).[4]

## III.   DISCUSSION

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). Here, Defendant failed to participate in this case, even though it was provided notice of it on February 15, 2023. (Doc. 9). Therefore, so long as Plaintiff's factual allegations support each element of its claims, a default judgment is appropriate.

When a collective bargaining agreement gives trustees the right to audit an employer's books and records, courts will enforce that right. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 582 (1985); *see Plumbers & Steamfitters Loc. No. 150 Pension Fund v. Vertex Const. Co.*, 932 F.2d 1443, 1451 (11th Cir. 1991) (holding that non-signatory funds to collective bargaining agreement could nonetheless audit employer records); *see also Nw. Adm'rs, Inc. v. Nat'l Express Transit Servs. Corp.*, No. 2:19-CV-00744 WBS AC, 2019 WL 3986807 (E.D. Cal. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4412389 (E.D. Cal. Sept. 16, 2019) (granting partial default judgment on pension trust fund's claim to audit employer's records). In *Central States*, the Supreme Court affirmed a district court's grant

---

[4] *Ebrahimi* explains that the first factor (determining that there is actually a final judgment) ensures the "application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Ebrahimi*, 114 F.3d at 166; *see Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777-78 (11th Cir. 2007) (defining "final" as "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and "judgment" as "a decision upon a cognizable claim for relief") (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 6 (1980)). The second factor (determining there is no just reason for delay) "serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay." *Ebrahimi*, 114 F.3d at 166 (citations omitted).

of summary judgment on a trustee's claim to audit employer payroll records pursuant to a collective bargaining agreement and trust documents. 472 U.S. 563-64. There, two multiemployer benefit plans (the trustee), had collective bargaining agreements that employers became signatories to, requiring the employers to make weekly contributions and binding the employers to the trust agreements governing the trustee.[5] *Id.* at 561-62. The trustee relied on employers self-reporting and would randomly audit employers' records to police the system. *Id.* at 562-63. The trustee contacted employers to conduct an audit of their payroll, tax, and personnel records, but the employers refused an audit. *Id.* at 563-64. Affirming summary judgment for the trustee on its claim to audit, the Court determined that such an audit was in line with the trustee's fiduciary duty under ERISA and its authority under the trust documents.[6] *Id.* at 574.

Here, Plaintiffs provide the CBA signed by Defendant. (Doc. 1-3). The CBA provides that signing it "ratifies the Agreements and Declarations of Trust and Rules and Regulations of the fringe benefit funds, including all collection procedures now or hereafter established by the trustees and any amendments or restatements thereof as fully as if such contractor was

---

[5] The specific power to audit provided:

Production of Records—Each employer shall promptly furnish to the Trustees, upon reasonable demand the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust. *The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust." Id.,* at A–46 (Art. III, § 5) (emphasis added).

*Id.* at 566.

[6] Moreover, the Court "noted, trustees were given the authority to sue to enforce an employer's obligations to a plan." *Cent. States, Se. & Sw. Areas Pension Fund*, 472 U.S. at 578-79 (citing 29 U.S.C. § 1132).

signatory to such document." *Id.* at 10. Further, Plaintiffs provide the Declarations of Trust provision requiring an employer to "promptly furnish to the Trustees, on demand, the names of his employees, Social Security numbers, the hours worked by each employee and such other information as the Trustees may reasonable require in connection with the administration of the Trust Fund and for no other purpose." (Doc. 1 at ¶ 9).[7]

Here, by failing to answer the complaint, Defendant admits that it was bound by the CBA and Declarations of Trust. Plaintiffs have alleged that Defendant was requested to submit to an audit pursuant to the CBA and Declarations of Trust but it refused. By failing to answer the complaint, Defendant admits that Plaintiffs have the authority to request and audit, and its failure to submit to an audit was in contravention of the CBA and Declarations of Trust. Finally, Plaintiffs have alleged that they are seeking an audit to investigate Defendant's compliance with contribution requirements under the CBA and Declarations of

---

[7] In full, the excerpted Declarations of Trust provision provides:

Each Employer shall promptly furnish for inspection to the Trustees or their designee, on demand, all payroll records relating to all employees (not only those employees conceded by the employer to be covered by a collective bargaining agreement requiring contributions to the Fund). The payroll records required to be produced shall include but not be limited to: (1) IRS Form 941; (2) Unemployment Compensation Tax Form UCT-6; (3) payroll journal, disbursements journal, payroll subsidiary; (4) time and job record cards; (5) listing or schedule of subcontractors; (6) all other payroll records.

Each Employer shall promptly furnish to the Trustees, on demand, the names of his employees, Social Security numbers, the hours worked by each employee and such other information as the Trustees may reasonable require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund. The union shall, upon the request of the Trustees, promptly furnish information available to it in respect to an Employee's employment status.

(Doc. 1 at ¶ 9).

Trust. Accordingly, I submit that Plaintiff has established a right to conduct an audit of Defendant's employee records.

Further, when, as here, the employer has not responded to a request to audit its records and it has failed to respond to an action for unpaid contributions, it is particularly permissible to permit an inspection of its books. Indeed, under 29 U.S.C. § 1132(g)(2)(E),[8] courts will order an injunction in the form of requiring an employer to permit an audit of its books and records. *See Bd. 11 Collective Acct. Tr. v. Dale C. Rossman, Inc.*, No. 8:19-CV-546-T-23SPF, 2019 WL 13246534, at *1 (M.D. Fla. Oct. 15, 2019) ("If a defendant both defaults in an action to enforce contributions in accord with a collective bargaining agreement and refuses to permit the inspection of books and records, sufficient evidence exists from which to infer that the defendant intends to frustrate the judgment") (citing *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 350 (E.D.N.Y. 2009) (Gershon, J.) (adopting a report and recommendation)). Here, permitting an audit of Defendant's books and records will permit Plaintiffs to determine the amount of any unpaid contributions and dues checkoff payments. (Doc. 11-1 at 2). Without an audit, Plaintiffs lack the means to determine these amounts. The amount of any unpaid contributions and dues checkoff payments is necessary to award relief on Counts II and III of the complaint. *Id.*

Finally, the balance of equity and the judiciary's administrative interests weigh in favor of granting partial default judgment. Here, an audit is necessary to determine the precise relief

---

[8] In full, 29 U.S.C. § 1132(g)(2)(E) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan— . . . such other legal or equitable relief as the court deems appropriate.

*Id.*

available on Plaintiffs' other claims for relief. Without an audit, the plaintiffs will have to approximate the amount of unpaid contributions and dues checkoff payments. Permitting an audit allows Plaintiffs to pursue relief on Counts II and III, and without it, litigation may be unnecessarily and unduly protracted. Accordingly, I submit that there is no just reason for delay in granting partial default judgment as to Count I of the plaintiffs' complaint.

## IV.    RECOMMENDATION

Accordingly, for the foregoing reasons, I submit that partial default judgment as to Count I of the Plaintiffs' complaint should be granted.

Recommended in Ocala, Florida on July 13, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy